766 P.2d 1243
**Weldon REYNOLDS,**
**Plaintiff–Respondent,**
**Cross–Appellant,**

v.

**AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, a corporation,**
**Defendant–Appellant,    Cross–Respondent.**

No. 16726.

Supreme Court of Idaho.

Dec. 30, 1988.

Brady, Saetrum, Tingey, Day & Joyce, Chartered, Boise, for defendant-appellant-cross-respondent.

Ringert, Clark, Harrington, Reid, Christensen & Kaufman, Boise, for plaintiff-respondent-cross-appellant. Andrew M. Harrington, argued.

SMITH, Judge Pro Tem.[1]

Today we are asked whether Idaho law will support a cause of action in tort against an insurer that negligently failed to make a timely settlement of an insurance claim. The question arises in the context of an appeal from a jury verdict for the plaintiff. The verdict granted the recovery to the plaintiff policy holder for damages suffered when a pending sale of items salvaged from his fire-damaged lease-hold property was lost. The jury agreed with Reynolds' contention that the defendant's unreasonable delay in settling his claim was the proximate cause of the loss of sale of certain salvageable items.

At trial, the jury rendered a special verdict for the plaintiff, finding that plaintiff had been damaged to the extent of $6,720. The trial court subsequently granted post-trial awards of prejudgment interest at a

---

1. District Judge, retired, Fourth Judicial District, sitting by designation of the Idaho Supreme Court.

rate of twelve percent interest from April 26, 1983 (the date of claim settlement), and attorney fees of $5,460. Appellant, American Hardware Mutual Insurance Company, appeals the trial court's action, in part contending the trial court erred in failing to grant defendant's motion for directed verdict. We affirm in part and reverse in part.

Plaintiff's theory of the case, with which the jury agreed, was that defendant's unnecessary 43–day delay in settling his insurance claim prevented the closure of a negotiated sale of all personal property salvaged from his fire-damaged premises, and that defendant was aware of the pending sale in that the defendant had been instrumental in arranging the transaction through a salvage broker. In addition, the defendant had been informed that the claimant's lease was about to expire on said premises, and that access to the personal items located thereon would be lost after that date. Defendant did settle the claim, but only four days prior to lease expiration.

For a more thorough understanding of the claim, some background facts are necessary. The damaged premises was a resort area convenience store known as "Wagontown." The property was leased by Weldon Reynolds from Paradise Resorts, Inc. The Reynolds–Paradise lease, which was not introduced into evidence, apparently called for improvements to be done on the property at Reynolds' expense. It is uncontroverted that these improvements, among them the installation of gasoline pumping equipment and storage tanks, were completed, and that Reynolds had the contract right of removal upon expiration of the lease.

On the night of March 14, 1983, Wagontown was damaged by fire. Reynolds' probable losses were covered by an insurance contract with defendant, and it was informed of the loss immediately after the fire.

On March 17, 1983, defendant dispatched an adjuster to Wagontown to determine the extent of the loss. The following week, on March 22, 1983, a representative of a salvage broker that had been contracted by defendant, visited the site and did subsequently negotiate a sale of all salvaged personal property to a third party restaurateur. It is the loss of this sale that forms the basis for the plaintiff's complaint.

The complaint asserts that the defendant's unreasonable delay caused plaintiff to lose all rights in the Wagontown property, including the right to enter and remove any of the personal property purchased and installed by the lessee. The prayer, which does not elucidate whether plaintiff seeks recovery in contract or tort, was for consequential damages in the sum of $20,000, plus attorney fees.

We commence our analysis with a look at the sufficiency of the pleadings presented by the complainant. From there, we will discuss whether Idaho law supports the plaintiff's asserted cause of action. Finally, we will discuss the plaintiff's burden of proof and determine if the requisite burden was met sufficiently to allow the case to go to the jury.

■ The Reynolds' complaint provides enough information to the court to satisfy I.R.C.P. 8(e)(1), which merely requires that a "simple, concise, and direct statement" be plead. Although the pleading is not at the apex of clarity, the court is allowed to draw all plain inferences from the facts plead when determining the question of sufficiency. *Nielson v. Bd. of Directors*, 63 Idaho 108, 118, 117 P.2d 472 (1941). We find the Reynolds' pleading sufficient to state a claim and to notify the defendant of plaintiff's contentions.

■ In addressing the issue of whether Idaho law recognizes a tort cause of action against an insurer who negligently delays the settlement of an insurance claim, this Court held, citing *McAlvain v. General Insurance Co. of America*, 97 Idaho 777, 554 P.2d 955 (1976), that a tort cause of action in negligence did exist for an insurance agent's negligent failure to adequately insure the claimant's property. *Keller Lorenz Co., Inc. v. Insurance Associates Corp.*, 98 Idaho 678, 570 P.2d 1366

(1977); *McAlvain v. General Insurance Co. of America, supra.* [2]

That conclusion finds support in the rule in *Taylor v. Herbold,* 94 Idaho 133, 138, 483 P.2d 664, 669 (1971), where the Court held that the duty owed by one party to another in contract could give rise to a cause of action in tort if the duty to take due care arises independently of the contract, *i.e.,* a mere breach of contract will not support a tort cause of action, but a breach of a separate duty to act reasonably will suffice. *See also, Aranda v. Insurance Company of North America,* 748 S.W.2d 210 (Tex.1988), where the Texas Supreme Court addresses the duty of good faith that impliedly exists in all insurance contracts, and holds that a tort cause of action for a negligent claim settlement can be sustained; *Trus–Joist v. Safeco Insurance Co.,* 735 P.2d 125, 132 (Ariz.Ct.App. 1986), wherein the Arizona Court of Appeals held that the question of an insurer's bad faith is based upon the reasonableness of the insurer's conduct under the circumstances, and is a question of fact for the jury; *White v. Western Title Insurance Co.,* 40 Cal.3d 870, 221 Cal.Rptr. 509, 516, 710 P.2d 309, 316 (1985), where a covenant of good faith and fair dealing in every insurance contract was recognized; *Farmer's Group, Inc. v. Trimble,* 691 P.2d 1138, 1142 (Colo.1984), where the quasi-fiduciary nature of the relationship between the insurer and the insured was acknowledged.

Our recent holding in *White v. Unigard,* 112 Idaho 94, 730 P.2d 1014 (1986), was limited in scope to intentional and unreasonable denials or delays of payments of insurance claims. Today's holding is consistent with those sentiments expressed by this Court in *White* in that we continue to recognize the "special relationship which exists between insurer and insured ... which requires that the parties deal with each other fairly, honestly, and in good

faith," 112 Idaho at 99, 730 P.2d at 1019, and we acknowledge the disparity in bargaining power between the insurer and insured, and the destructive effects that a negligent settlement practice can have upon ordinary citizens caught by the debilitating force of a sudden catastrophic loss. We extend the *White v. Unigard* holding, and distinguish it to the extent that it may be construed to be inconsistent with today's decision, to cover negligent, as well as intentional denials or delays of the payment of insurance claims. We hold that a properly pled cause of action can be sustained against an insurer which negligently fails to make a timely settlement of an insurance claim.

Finally, we must focus upon the trial record to determine whether American Hardware Mutual's motion for a directed verdict was properly denied. The Idaho Rules of Civil Procedure place the burden of proof upon the claimant to establish the prima facie case at trial. It is well settled law that the burden is upon the claimant to "offer ... facts which, when interpreted in the light most favorable to them, would support" their asserted cause of action against the defendant. *Hall v. Bacon,* 93 Idaho 1, 453 P.2d 816 (1969). Thus it is necessary for this Court to review the essential elements of a cause of action in contract and of a cause of action in tort to determine whether the plaintiff has satisfied this burden.

If a breach of contract is alleged, the burden is upon the claimant to show "the making of the contract, an obligation assumed by defendants, and their breach or failure to meet such obligation." *Thomas v. Cate,* 78 Idaho 29, 31, 296 P.2d 1033, 1035 (1956).

If a tort cause of action in negligence is asserted, the burden is upon the claimant to show, "(1) a duty, recognized by law,

---

**2.** Relative to I.C. § 41–1329, the Unfair Claims Settlement Practices Act, this Court has held that the statute "does not give rise to a private right of action whereby an insured can sue an insurer for statutory violations committed in connection with the settlement of the insured's claim." *White v. Unigard,* 112 Idaho 94, 101, 730 P.2d 1014, 1021 (1986). Consistent with

that decision, the Court today reiterates that the statute does not afford a plaintiff a remedy for an insurer's negligent delay of claim settlement, and that a cause of action in tort for negligence is the proper means to obtain private recovery; that is the plaintiff must prove actual negligence, and that proof of a violation of the statute is not negligence per se.

requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980).

■ On our reading of the record, we conclude that plaintiff failed to prove a contract claim upon which relief could be granted. Nothing more than a vague assertion · was made that the defendant breached some duty owed to the plaintiff. It was shown that the defendant took 43 days to settle the damage claim, but this showing alone did not satisfy the plaintiff's threshold burden of proof. Plaintiff did not allege, nor did he establish a contractual obligation of the defendant to settle the claim in less than the actual time taken. This failure to meet the required burden of proof can be readily derived from the plaintiff's failure to introduce the insurance contract into evidence. A reasonable jury could not have concluded form the facts presented that the defendant had assumed a contractual obligation to pay plaintiff in less than 43 days, or otherwise be liable for breach of a contractual duty.

■ However, viewing the complaint as sounding in tort for negligent fulfillment of an obligation to reasonably investigate and bring an insurance claim to a conclusion, a review of the plaintiff's documentary evidence and testimony introduced at trial demonstrating the extensive communications between plaintiff and defendant could have satisfied a jury of reasonable minds that the 43 days consumed in bringing the claim to a conclusion was the result of the defendant's less than diligent conduct after having been fully advised of the urgency of the plaintiff's situation, and that defendant's negligence was the proximate cause of the plaintiff's loss. We hold that it was for a jury—with its collective knowledge to draw upon in such matters—to determine whether the time that lapsed between claim filing and claim settlement was prolonged *beyond* a reasonable time. The plaintiff did meet his threshold burden of proof thus placing the question of defendant's negligence properly before the jury. Accordingly, the trial court did not err in denying defendant's motion for a directed verdict.

In conclusion, we recognize there may be a tort cause of action against an insurer who negligently delays in settling an insurance claim in circumstances such as presented in the instant case, and we hold that judgment in favor of the plaintiff is supported by the evidence. The judgment entered on the jury's verdict is affirmed.

■ On the issue of attorney fees, however, we agree with defendant's contention that the trial court abused its statutory discretion in awarding attorney fees, and reverse the award of attorney fees.

In certain cases, I.C. § 41–1839 allows attorney fees for the amount that "the court shall adjudge (to be) reasonable" where the insurer has failed for a period exceeding thirty days after a proof of loss has been furnished, of the type specified under the insurance policy, "to pay the person entitled thereto the amount justly due...." This Court has recently construed I.C. § 41–1839 to limit awards of attorney fees to those instances where (1) the insured has provided a proof of loss as required by the insurance policy; (2) the insurance company fails to pay an amount justly due under the policy within thirty days of such proof of loss; and 3) the insured thereafter is compelled to bring suit to recover for his loss. *Hansen v. State Farm Mutual Auto Insurance Co.*, 112 Idaho 663, 671, 735 P.2d 974, 982 (1987).

The suit here was not for the fire loss, but rather for the defendant's negligence in settling that fire loss within a reasonable time. Accordingly, I.C. § 41–1839 is inapplicable in this case. Instead, to award attorney fees or not would involve I.C. § 12–121 and I.R.C.P. 54(e)(1). Under these provisions, an award of attorney fees must be based upon a showing that defendant acted unreasonably in defending the lawsuit. There has been no such showing in this case. Accordingly, plaintiff was not entitled to attorney fees.

■ The appellant next asserts that the order granting prejudgment interest was in error and correctly cites I.C. § 28–22–104 for the proposition that prejudgment interest does not become due until the claimed amount can be readily ascertained. *Ace Realty, Inc. v. Anderson*, 106 Idaho 742, 682 P.2d 1289 (Ct.App.1984) citing *Mitchell v. Flandro*, 95 Idaho 228, 506 P.2d 455 (1973) and *Farm Development Corp. v. Hernandez*, 93 Idaho 918, 478 P.2d 298 (1970); *Guyman v. Anderson*, 75 Idaho 294, 296, 271 P.2d 1020, 1021 (1954). After a review of the pertinent facts, we hold that the trial court erred when it calculated prejudgment interest effective from the day that the insurer's claim settlement was rendered rather than from the day that the jury rendered its verdict.

■ Under claims where contract terms have been entered into evidence, the contract terms usually define the date that the damages become ascertainable. However, as noted, *supra*, contract analysis is inapplicable here because no contract is in evidence.

■ With claims involving unliquidated damages, the underlying principle of calculating prejudgment interest from the point at which the damage claim first became readily ascertainable remains unchanged. *Davis v. Professional Business Services*, 109 Idaho 810, 817, 712 P.2d 511, 518 (1985); *Ace Realty, Inc. v. Anderson, supra; Child v. Blaser*, 111 Idaho 702, 727 P.2d 893 (Ct.App.1987). However, it becomes necessary where damages are not liquidated to look to the individual circumstances in making the determination. On the present facts, the date on which the jury rendered its verdict becomes the earliest date upon which the damage claim would begin to accrue prejudgment interest.

Award of attorney fees reversed; judgment on the verdict affirmed; award of prejudgment interest reversed and the cause remanded for recalculation.

BISTLINE and HUNTLEY, JJ., concur.

BISTLINE, Justice, specially concurring.

My purpose in writing separately is not to attempt any enhancement of Justice Pro Tem Smith's majority opinion, but to allay some of the fears, worries and trepidations of the two dissenting Justices.

Justice McFadden has written at length to illustrate his view that Reynolds never crossed his threshold obligation of establishing any *duty* on the part of American Mutual. Justice Bakes has agreed with that view, with two additional thoughts. One, he believes that "American Hardware's duty to [Reynolds] was created by the contract," and two, as a general proposition, he sees "great doubt [thrown] on all of our prior law relating to the concept of duty in tort."

The answer to both of the Justices is that one need not become over excited if one would first pause to closely read the opinion authored by Justice Smith. After providing first a history of the transaction leading to the litigation, he delves into applicable precedential case law to a considerable extent. In particular, in footnote 2 he mentions *White v. Unigard*, 112 Idaho 94, 730 P.2d 1014 (1986) and thereafter in text mentions, *Farmers Insurance Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984), "where the quasi-fiduciary nature of the relationship between the insurer and the insured was acknowledged," following which, he immediately discussed *White v. Unigard* in connection with an action "against an insurer which negligently fails to make a *timely* settlement of an insurance claim."

A settlement which is not *timely* made, but unreasonably delayed, shows the element of being not reasonable action. One would prefer to believe that had the two dissenters paused long enough to become acquainted with the *Trimble* case, there would have been two less dissents. The Colorado Supreme Court to my knowledge is well respected, and its opinion in *Trimble* is unanimous, the type of an opinion which we in the legal business, on both sides of the bench, are delighted to utilize.

In *White v. Unigard* this Court relied upon and cited to (among other cases) *Gruenberg v. Aetna Insurance Co.,* 9 Cal. 3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) for the principle that an insurer's duty:

> [I]s beyond that which the policy imposes by itself—the duty to defend, settle, and pay—but is a duty imposed by law on an insurer to act fairly and in good faith in discharging its contractual responsibilities. *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973).

Contrary to some authority, this duty arises not only in the context of third party situations (actions brought as a result of the insurer's failure to settle the claims of third parties within the policy limits of the insured), but also in first party actions (when the insured is personally filing a claim for benefits under the insurer under the policy). As the court in *Gruenberg* stated:

> It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. *The duty to so act is imminent in the contract whether the company is attending to claims of third persons against the insured or the claims of the insured itself.* Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort. *Gruenberg, supra,* 108 Cal.Rptr. at 486, 510 P.2d at 1038 (emphasis added).

*White v. Unigard,* 112 Idaho 94, 96, 730 P.2d 1014, 1016 (1986) (emphasis in original, and emphasis added).

The Colorado Supreme Court in the *Trimble* case used much the same language:

> The standard of conduct on the part of the insurer when dealing with claims arising under an insurance policy is shaped by, and must reflect, the quasi-fiduciary relationship that exists between the insurer and the insured by virtue of the insurance contract.

\* \* \* \* \* \*

> *The question* of whether an insurer has breached its duties of good faith and fair dealing with its insured *is one of reasonableness under the circumstances.* The relevant inquiry is whether the facts pleaded show the absence of any reasonable basis for denying the claim, 'i.e., would a reasonable insurer under the circumstances have denied *or delayed* payment of the claim under the facts and circumstances.' *Anderson* [*v. Continental Ins. Co.*] 84 [85] Wis.2d [675] at 692, 271 N.W.2d [368] at 377 [(1978)]; *Noble* [*v. National American Life Ins. Co.,* 128 Ariz. 188] 624 P.2d [866] at 868 [1981].
>
> The court of appeals characterized bad faith breach of an insurance contract as an 'intentional tort,' and stated that evidence of intent of a degree less than that necessary to prove punitive damages is required to prevail on the claim. We agree with the analysis of the Supreme Court of Arizona, however, that, while the conduct forming the basis of the claim will necessarily be an 'intentional act' by virtue of the necessity of a conscious decision on the part of the insurer to refuse to pay a claim, *the standard applicable to establish the tort of bad faith remains one of reasonableness under the circumstances.* Compare *Noble,* 624 P.2d at 868 *with Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982). In our view, evidence of intent, such as intentional misconduct, actual dishonesty, fraud, or concealment is *not* a prerequisite to recovery on a claim of bad faith breach of an insurance contract.

*Farmer's Group Inc. v. Trimble, supra,* 691 P.2d 1138, 1141.

A jury decided that payment of the claim was unreasonably delayed; and the Court's opinion is on firm ground in upholding the judgment on that verdict.

HUNTLEY, J. and SMITH, J. Pro Tem., concur.

BAKES, Justice, dissenting:

I concur with the dissent of Justice McFadden which explains clearly why the trial court erred in not granting the defendant's motion for a directed verdict. Reduced to its basic holding, the majority opinion states that an insurance carrier can be held liable in tort for failing to settle a claim quickly enough, even though the insurance contract which defines the settlement procedures which the claimant must rely on to establish a legal duty on the insurance company's part, has not been introduced into evidence.

The defendant American Hardware's duty to its insured was created by the insurance contract. Absent that insurance contract there was no relationship between the parties. Yet this Court assumes that there is some legal duty in tort between the parties, independent of the contract, which duty may well be contrary to the contractual duty which was contained in the insurance agreement. The time and manner of settlement in this case may well have been within the limits of the insurance contract itself. Without proof of the contractual relationship between the parties, there is no relationship between the plaintiff and defendant which could create a duty in tort upon the defendant. As this Court held in *Taylor v. Herbold*, 94 Idaho 133, 138, 483 P.2d 664, 669 (1971), "To found an action in tort, there must be a breach of duty apart from the non-performance of a contract." The Court's opinion today throws great doubt on the continued viability of all our prior cases relating to the concept of breach of contract and duty in tort.

Furthermore, the majority opinion allows the plaintiff to recover consequential damages when this Court, as recently as two months ago in *Brown's Tie & Lumber Co. v. Chicago Title Co.*, 115 Idaho 56, 764 P.2d 423 (1988), again recognized that consequential damages are not recoverable in these circumstances. In his complaint Reynolds asserted that defendant American Hardware's delay caused his damages, including the loss of a sale of his business property which could have been negotiated and perhaps ultimately consummated. As

the majority acknowledges, *"The prayer, which does not elucidate whether plaintiff seeks recovery in contract or tort, was for consequential damages* in the sum of $20,-000.00 plus attorney fees." *Ante* at 364, 766 P.2d at 1245, emphasis added.

The same scenario was presented in *Brown's Tie* and we there reaffirmed that such consequential damages are not recoverable. In *Brown's Tie* "we address[ed] the propriety of the trial court's order in limine, which excluded evidence of business losses allegedly incurred during the period of delay and also evidence purporting to establish the terms of a sale which Brown's Tie could have negotiated but for the delay." At 61, 764 P.2d at 428. In response, we stated the following:

"These damages were properly excluded. Under general contract principles, *consequential damages are not recoverable unless they were specifically contemplated by the parties at the time of contracting:*

'The damages for which compensation is sought need not have been precisely and specifically foreseeable, but only *"such* as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract." *Suitts v. First Sec. Bank of Idaho,* N.A., 110 Idaho 15, 22, 713 P.2d 1374, 1381 (1985) (emphasis in original).'

"Lost profits are generally not recoverable in contract *unless there is something in that contract that suggests that they were within the contemplation of the parties* and are proved with reasonable certainty. *Nelson v. World Wide Lease, Inc.,* 110 Idaho 369, 378, 716 P.2d 513, 522 (Ct.App.1986)." (Emphasis added.)

Here we are not able to determine if there is something in the contract which suggests that the prayed-for consequential damages were within the contemplation of the parties at the time of contracting. Plaintiff has failed to introduce the contract, or any other evidence regarding settlement procedures contemplated by the parties at the time they entered into the contract, into evidence. Accordingly, there

is no basis for an award of consequential damages in this case. For all these reasons, I respectfully dissent.

McFADDEN, J. Pro Tem., concurs.

McFADDEN, Justice Pro Tem., dissenting:

I dissent from the majority's determination that American Hardware's motions for directed verdict were properly denied. The majority does correctly recognize, *ante* at 365–66, 766 P.2d at 1246–47, that the burden of proof was on Reynolds, regardless of the theory of recovery asserted—be it in contract or in tort. At pages 365–66, 766 P.2d at 1246–47, the majority states:

> "Finally, we must focus upon the trial record to determine whether American Hardware Mutual's motion for a directed verdict was properly denied. The Idaho Rules of Civil Procedure place the *burden of proof upon the claimant to establish the prima facie case at trial.* It is well settled at law that the burden is upon the claimant to 'offer ... facts which, when interpreted in the light most favorable to them, would support' their asserted cause of action against the defendant. *Hall v. Bacon,* 93 Idaho 1, 453 P.2d 816 (1969). *It will be necessary for this Court to review the essential elements of a cause of action in contract and of a cause of action in tort to determine whether the plaintiff has satisfied this burden.*" (Emphasis added.)

The majority then correctly acknowledges that "[t]he record reveals that plaintiff failed to prove a contract claim upon which relief could be granted," especially since he failed to introduce the insurance contract into evidence. *Ante* at 365–66, 766 P.2d at 1246–47.

Where the majority errs, however, is in its determination that "[t]he trial record further reveals that the plaintiff did establish the requisite prima facie elements of a negligence claim."[3] *Id.* The majority recites the requisite *prima facie* elements of a negligence claim. As acknowledged, *ante* at 365–66, 766 P.2d at 1246–47.

> "If a tort cause of action in negligence is asserted, the *burden is upon the claimant to show,* '(1) *a duty, recognized by law,* requiring a defendant conform to a certain standard of conduct; (2) *a breach of that duty;* (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage.' *Alegria v. Payonk,* 101 Idaho 617, 619, 619 P.2d 135, 137 (1980)." (Emphasis added.)

Even though the majority recognized the *prima facie* elements of a negligence claim, it failed to sufficiently analyze each element. The burden was on Reynolds to prove the threshold element, *i.e.,* that there was "a duty, recognized by law" owed him by American Hardware. The majority, though, makes no analysis of this threshold issue; rather, in less than one paragraph the majority somehow summarily determines that Reynolds met his burden of proof as to all four elements. This simply is not satisfactory legal analysis. Had a sufficient analysis been accomplished, it would have become evident that the threshold "duty, recognized by law" element was not established, nor could it be. Plaintiff Reynolds points to no common law or statutory "duty, recognized by law" requiring an insurer to make final settlement of a claim in less than 43 days. Neither does Reynolds establish any such duty under the contract of insurance between himself and American Hardware. How could he? As the majority acknowledges, he failed to in-

---

**3.** Although it apparently has been decided that Idaho recognizes a tort for an insurer's *intentional* bad faith in settling first-party claims of its insureds (see discussion of *White v. Unigard Mutual Ins. Co.,* 112 Idaho 94, 730 P.2d 1014 (1986), *infra*), it has not yet been decided whether Idaho recognizes a tort for *negligent* insurance settlement. Either way, the outcome of this case is the same. If Idaho does recognize such a tort of negligence, the plaintiff's action here must fail because he has failed to establish any of the requisite *prima facie* elements of a negligence claim. Conversely, if Idaho does not yet recognize a tort for negligent insurance settlement, this certainly is not the case to decide the issue since, again, no *prima facie* case has been made. Reynolds has not established a duty, a breach of that duty, or proximate causation. Accordingly, this case simply is not a proper case upon which to base such a new tort.

troduce the insurance contract into evidence. *Ante* at 365–66, 766 P.2d at 1246–47.

Neither was there any testimony or any other kind of evidence offered by Reynolds establishing that some sort of contractual duty existed, but was then breached by American Hardware. In fact, both the majority and Reynolds acknowledge that there was no dissatisfaction with American's performance under the insurance contract; rather, "Weldon Reynolds, the insured, does not contest the settlement amount...." *Ante* at 364, 766 P.2d at 1245. Further, the threshold duty element not being established, it is impossible for Reynolds to prove any of the other elements of a negligence claim; *i.e.*, if a duty is not established, a breach of that duty cannot be established either. And if there is no duty breached, proving a causal connection between the breach and any injuries is likewise impossible.

The mere fact that a party has not performed a contract quickly enough to suit the other party is not sufficient to constitute a tort, either. As this Court stated in *Carroll v. United Steelworkers of America*, 107 Idaho 717, 692 P.2d 361 (1984):

"Under Idaho law it is settled that an alleged failure to perform a contractual obligation is not actionable in tort. As Justice Bakes observed in his special concurrence in *Dunbar [v. United Steelworkers of America*, 100 Idaho 523, 602 P.2d 21 (1979)], *supra*, Idaho case law establishes that mere breach of contract does not ordinarily constitute a tort. In *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971), we stated, 'To found an action in tort, there must be a breach of duty apart from the *nonperformance* of a contract.' In *Just's, Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 583 P.2d 997 (1978), we again acknowledged that 'a tort requires the wrongful invasion of an interest protected by the law, *not merely an invasion of an interest created by the agreement of the parties.*' In the instant case, Carroll simply alleges that the Union failed to perform its contractual obligations under the Collective Bargaining Agreement. Mere nonfeasance, even if it amounts to a willful neglect to perform the contract, is insufficient to establish a duty in tort. [Citation omitted.] Consequently, Carroll's cause of action, if any, arising from the Collective Bargaining Agreement *lies only in contract, not in tort.*" 107 Idaho at 719, 692 P.2d at 363 (footnotes omitted, emphasis added).

*See Rawson v. United Steelworkers of America*, 111 Idaho 630, 633, 726 P.2d 742, 745 (1986), vacated and remanded on another issue, 482 U.S. 901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987) ("A breach of contract is not in and of itself a tort."); *Just's, Inc. v. Arrington Construction Co., Inc.*, 99 Idaho 462, 583 P.2d 997 (1978). In this case it would appear that the trial court and the plaintiff *assumed* there was a duty, a breach of which would amount to a tort. As a matter of law, this is error. A duty cannot be assumed; rather, the burden is on the plaintiff to *prove* its existence and subsequent breach.

In short, Reynolds' complaint attempts to state a negligence claim against American Hardware. Claimant Reynolds has the burden of proving each *prima facie* element of a negligence claim, but the evidence Reynolds presented at trial failed to demonstrate any legally recognizable duty owed him by American Hardware. Since that threshold *prima facie* element was not proved, the legal analysis of Reynolds' negligence claim is at an end. Accordingly, I would hold that, as a matter of law, Reynolds failed to establish his *prima facie* negligence case, and thus the trial court erred when it failed to grant American Hardware's motions for a directed verdict.

Although not pled by Reynolds, neither does the evidence he presented establish an intentional tort. In *White v. Unigard Mutual Ins. Co.*, 112 Idaho 94, 730 P.2d 1014 (1986), this Court discussed in detail the intentional tort which exists where an insurance company fails to settle an insurance claim in good faith. While *White* confirmed that there is a common law duty on the part of insurers to settle first party claims in good faith, it also emphasized that any such claims are necessarily premised upon the insurer's intentional delay in

settlement or denial of a claim. Relief is grounded in the realization that an insured cannot be adequately compensated in contract law for an insurer's intentional and unreasonable denial of a claim or delay in settlement.

Although the instant case was tried without the benefit of *White v. Unigard, supra,* it is clear that the complaint failed to state, and the evidence produced at trial failed to prove, a bad faith claim. Again, I stress that there is nothing in the record indicating that Reynolds alleged or attempted to prove that American Hardware intentionally delayed in settling Reynolds' claim. Thus, this is not a case involving the intentional tort of bad faith failure to settle. The underlying claim was settled to Reynolds' satisfaction, and the majority acknowledges as much, *ante* at 364, 766 P.2d at 1245.

By his evidence Reynolds attempted to show he had given American Hardware notice that he needed to have the claim settled before his lease expired. This notice, Reynolds argues, created the duty American Hardware is alleged to have breached. Reynolds' notice, however, could not create a binding duty on American Hardware. If a duty existed it would stem from the insurance contract, but the contract was not put into evidence. Furthermore, if Reynolds' claim was actually based on a duty to settle within a reasonable time, then he failed to present any relevant evidence regarding what could constitute a reasonable settlement time under the circumstances. In other words, even assuming *arguendo* that this theory of recovery is legally cognizable, Reynolds again failed to prove the standard of care (the duty) that would be applicable to American Hardware under it.

In sum, Reynolds' rudimentary claim sought consequential damages based on the breach of some duty owed him by American Hardware, or, in the alternative, based on American Hardware's intentional delay in settling his insurance claim. At trial, however, Reynolds' evidence failed to demonstrate (1) a legally recognizable duty that was breached by American Hardware or (2) intentional actions or bad faith on American Hardware's part in the settlement process.[4] As a matter of law, then, Reynolds failed to establish his *prima facie* case, and the trial court erred when it failed to grant American Hardware's motion for a directed verdict.

Because Reynolds failed to prove the threshold element of any theory of recov-

---

4. Even if we assume that Reynolds had proved either a negligent or an intentional tort, the evidence produced at trial on the issue of causation was inadequate to go to the jury. Both Mr. Carrie (president of Paradise Resorts, Inc.) and Mr. Reynolds indicated that the property was abandoned by Reynolds at the property site. Reynolds explained that the property was never recovered because he had lost the rights to it under the lease. Carrie testified that Paradise never intended to keep Reynolds' property. In fact, at the time of trial some items were still at the building site and others were located in a Paradise warehouse. The lease is somewhat ambiguous. It reads as follows:

"4. TRADE FIXTURES. The lessee may install upon the leased premises such trade fixtures as the lessee deems advisable, which fixtures *shall be and remain the property of the lessee* even though attached to the building. *The lessee shall have the right to remove such fixtures* from the leased premises *at the time of the expiration of this lease or any renewal hereof or at any time prior thereto,* at the same time repairing any damage to the premises caused by such removal." (Emphasis added.)

Carrie also testified that even though Paradise was not renewing the lease, Reynolds could have continued his business on a month to month basis until a new tenant was located. Both men testified that Reynolds never contacted Carrie about removing the equipment from the premises.

Thus, Mr. Reynolds apparently abandoned the property at the site. This action took place even though the electronic pump monitoring devices and other equipment could have easily been removed by Mr. Reynolds in his vehicle. Additionally, there is evidence that four days before Reynolds' lease expired there was four feet of snow on the ground and it would have been impossible for him to remove the tanks at that time because of the snow. There is absolutely no evidence that on May 1st conditions had changed. In fact, the record is without evidence that American Hardware's actions were a more significant cause of Mr. Reynolds' loss than either the weather or Mr. Reynolds' own actions. Accordingly, Reynolds not only failed to show a legally cognizable duty (or a breach of that duty) at trial, but he also failed to prove the elements of causation.

ery, I would reverse the judgment below and dismiss the appeal with prejudice. Since this issue is dispositive, additional issues raised by the parties do not need to be addressed.

BAKES, J., concurs.